No. 14-16697

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

In re:

KONSTANTIN KUPFER and MARGARITA KUPFER,

Appellants.

---

KONSTANTIN KUPFER AND MARGARITA KUPFER,

Appellants,

v.

KARIM SALMA AND ROBERTA SALMA, AS
TRUSTEES OF THE SALMA FAMILY TRUST, LINDSEY
S. BRUEL, RIYAD R. SALMA, AND LAITH K. SALMA,

Appellees.

---

On Appeal from the United States District Court, Northern
District of California, San Francisco Division, Case No.
14-00668, Honorable William H. Orrick, Presiding
(Appeal from Bankruptcy Court Case No. 13-31611-DM)

---

## APPELLEES' ANSWERING BRIEF

---

Respectfully submitted by
MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
MICHELE THOMPSON, ESQ., CA Bar #241676
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for Appellees

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................... 1

II.   STATEMENT OF FACTS ............................................... 1

III.  STANDARD OF REVIEW .............................................. 4

IV.  SUMMARY OF ARGUMENT .......................................... 4

V.   DISCUSSION................................................................... 5

    A.     Section 502(b)(6) and its Purpose ................................ 5

    B.     Under *El Toro*, Creditors' Claim Here Is Not Capped. ............. 8

    C.     Debtors' Have Misapplied the *El Toro* Test ............................ 10

    D.     Debtors' Argument Attempts to Conflate Breaches and Termination...... 12

    E.     Post-*El Toro* Decisions Support the District Court Ruling as Well.......... 14

    F.     Debtors' Cited Decisions do Not Support Their Argument..................... 15

    G.    Debtors' Discussion of Plain Meaning Misses the Point. ........................ 17

    H.    Debtors' Analysis of Legislative Purpose is Misguided. ......................... 17

    I.     Debtors Misunderstand the District Court's Reasoning. ......................... 19

    J.     Debtors Misunderstand District Court's Reference to Judgments............ 21

VI.  CONCLUSION................................................................... 22

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*In re Energy Conversion Devices, Inc.*, 483 B.R. 119 (Bankr. E.D. Mich. 2012) ..14, 15

*In re Healthy Hut Incorporated*, 506 B.R. 526 (Bankr. Hawai'i 2014) .................. 15, 16

*In re I-Mind Education Systems, Inc.*, 269 B.R. 47, 48 (Bankr. N.D. Cal. 2001) ........... 9

*In re Joseph and Nancy Brown*, 398 B.R. 215 (Bankr. N.D.Ohio 2008) ............... 15, 16

*In re McSheridan*, 184 B.R. 91 (9th Cir. B.A.P. 1995) .................................................... 10

*In re MDC Systems, Inc.*, 488 B.R. 74 (Bankr. E.D.Pa 2013) ....................................... 14

*Lawrence v. Dep't of Interior*, 525 F.3d 916, 920 (9th Cir. 2008) ................................... 4

*Oldden v. Tonto Realty Corp.*, 143 F.2d 916, 919-920 (2nd Cir. 1944).................... 6, 18

*Saddleback Valley Community Church v. El Toro Materials Company, Inc. (In re El Toro Materials Company)*, 504 F.3d 978 (9th Cir. 2007).................................... passim

*Treesource Industries, Inc.*, 363 F.3d 997, 998 (9th Cir. 2004) ...................................... 9

**Other Authorities**

11 U.S.C. § 502(b)(6)............................................................................................... passim

**Rules**

S.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978), U.S. Code Cong. & Admin.News 5787 (1978)......................................................................................................... 7, 18

# I.   INTRODUCTION

Appellees KARIM SALMA and ROBERTA SALMA, as trustees of the Salma Family Trust, LINDSEY S. BRUEL; RIYAD R. SALMA; and LAITH K. SALMA (collectively, "Creditors"), submit this answering brief (the "Answering Brief") in this Court of Appeals, case no. 14-16697, in response to the opening brief (the "Opening Brief") filed by appellants KONSTANTIN KUPFER and MARGARITA KUPFER ("Debtors") on December 15, 2014 (docket no. 11).

The Debtors appeal from the *Order Affirming Bankruptcy Court's Order* (the "Order," Excerpt of Record "E.R." Vol. 1 pp. 1–11;), issued by the United States District Court, Northern District of California (the "District Court"), on August 26, 2014, in which the District Court affirmed the earlier ruling of the United States Bankruptcy Court, Northern District of California (the "Bankruptcy Court") entered on January 15, 2014 (E.R. Vol. 1, pp. 12–13).  Both the District Court and the Bankruptcy Court ruled in favor of Creditors, as former landlords of Debtors, allowing their claim against Debtors, as chapter 11 debtors, for attorneys' fees and costs in the amount of $194,184.18 (as part of the total amount of their allowed claim, $913,403.94), outside of the cap of Section 502(b)(6) of the Bankruptcy Code.

# II.   STATEMENT OF FACTS

In general, Creditors agree with the facts as recited in the Order of the District Court, summarized here.

The Debtors commenced this bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on July 16, 2013 (the "Petition Date"). Prior to the Petition Date, Creditors were landlords of Debtors under leases (collectively, the "Leases", E.R. Vol. 2, pp. 108-157:158-212) of Suites 106 and 205 of commercial real property located at 1375 – 1395 Burlingame Avenue, Burlingame, California (the "Leased Property").  Debtors took possession of the

Leased Properties on May 20, 2008 (Suite 106) and April 1, 2008 (Suite 205).

In 2009 and 2010, Debtors stopped paying rent owing under the Leases (E.R. Vol. 1, p. 2:5-21). Creditors filed a complaint for breach of the Leases for, among other things, nonpayment of rent, in order to obtain a writ of attachment. Debtors filed a cross-complaint for various alleged claims against Creditors, including breach of contract, nuisance, negligent interference with contract, and other alleged causes of action (E.R. Vol. 1, p. 2:9-11). The civil action was stayed pending binding arbitration required under the Leases.

An arbitration hearing (the "Arbitration") of the dispute was conducted, and at the conclusion of the Arbitration, the arbitrators found in favor of Creditors, awarding total damages in the amount of $1,481,583.18 (the "Arbitration Award") (E.R. Vol. 1, pp. 2-3; E.R. Vol. 2, pp. 95-106). The Arbitration Award consisted of unpaid rent and damages relating to Suite 105 in the amount of $878,466; unpaid rent and damages relating to Suite 206 in the amount of $408,933; and attorneys' fees and costs in the amount of $194,184.18 (E.R. Vol. 1, p. 3:2-5). The Arbitrators denied any recovery to Debtors on account of their cross-complaints. The Arbitration Award, issued on June 19, 2013, can be found in the excerpts of record at (E.R. Vol. 2, pp. 95-106). Debtors' bankruptcy petition followed a few months later.

After the Petition Date, on September 17, 2013, Creditors filed a proof of claim in the Debtors' chapter 11 case based on the Arbitration Award. Debtors filed an objection to the claim, and thereafter amended their objection, ultimately asserting that the claim should be allowed in the amount of $719,219.76, calculated to be unpaid past rent plus the statutory cap permitted by Section 502(b)(6) of the Bankruptcy Code for future rent (E.R. Vol. 1, pp. 3-4; E.R. Vol. 2, p. 74). Creditors opposed the objection to their claim, asserting that the claim should be allowed in the greater amount of $913,403.94, that being the amount of past-due

2

rent and the statutory cap, as calculated by Debtors, plus the attorneys' fees and costs awarded by the Arbitrators in the amount of $194,184.18 (E.R. Vol. 1, p. 3). Creditors argued that under Section 502(b)(6) and applicable decisional law, their attorneys' fees and costs did not constitute damages arising from lease termination, were therefore not subject to the Section 502(b)(6) cap, and must be added to the amount of the allowed claim accordingly.

Thus, the sole issue presented to the Bankruptcy Court in Debtors' claim objection was whether Creditors' attorneys' fees and costs, as awarded by the Arbitrators, were subject to the monetary cap of Section 502(b)(6) for future rent and other lease termination damages, or were allowable outside of the cap. The issue was fully briefed by the parties, and on January 6, 2014, the Bankruptcy Court issued a tentative ruling (the "Tentative Ruling") in Creditors' favor, determining that the attorneys' fees and costs were not future rents and costs subject to the Section 502(b)(6) cap:

> The cap of section 502(b)(6) applies to lost future rent. See *El Toro*, 504 F3d, at 980 (The structure of the cap – measured as a fraction of the remaining term – suggests that damages other than those based on a loss of future rental income are not subject to the cap). The arbitration award of fees and costs had nothing to do with future rent reserved. See *McSheridan*, 184 B.R. at 99 (Charges coming under rent reserved must be designated rent or additional rent; related to value of the property or the lease; and properly classifiable as rent).

(E.R. Vol. 2, p. 283). Debtors accepted the Tentative Ruling, and an order allowing Creditors' claim in the amount of $913,403.94 was thereafter entered (E.R. Vol. 2, pp. 62-63).

On February 13, 2014, Debtors initiated an appeal of the Bankruptcy Court's order to the District Court. The appeal was thereafter fully briefed by the parties, and on August 26, 2014, the District Court issued its decision, the Order, affirming

the Bankruptcy Court's allowance of Creditors' claim, including the attorneys' fees and costs at issue. In its Order, the District Court concluded that under Ninth Circuit law, as described below, Creditors' attorneys' fees and costs did not arise from termination of the Leases, and were therefore not subject to the cap of Section 502(b)(6).

On September 4, 2014, Debtors initiated this appeal to the Court of Appeals.

### III. **STANDARD OF REVIEW**

As the District Court noted, the relevant facts in this case are largely undisputed, and thus this appeal presents pure questions of law, which the Court should review on a *de novo* basis. *De novo* review requires that the appellate court view the case from the same position as the District Court. *Lawrence v. Dep't of Interior*, 525 F.3d 916, 920 (9th Cir. 2008).

### IV. **SUMMARY OF ARGUMENT**

The primary issue before the Bankruptcy Court and the District Court, and now the primary issue before the Court of Appeals in this appeal, involves interpretation of Section 502(b)(6) of the Bankruptcy Code, and whether that statute permits a claim for a landlord's attorneys' fees arising from a tenant's lease breaches, outside of the monetary cap established by the statute for certain lease claim components. The Bankruptcy Court and the District Court correctly ruled that Section 502(b)(6) does permit such a claim, outside of the cap, based on Ninth Circuit precedent, *Saddleback Valley Community Church v. El Toro Materials Company, Inc. (In re El Toro Materials Company)*, 504 F.3d 978, 979 (9th Cir. 2007) ("*El Toro*").

In this appeal, Debtors argue that both of the courts below erred in their ruling, and that both courts misapplied the Ninth Circuit precedent. In making the argument, however, Debtors have dramatically misconstrued the holding of the *El Toro* decision of this Court of Appeals, turning this Court's simple test on its head

4

and conflating damages that arise from lease *breaches*, such as attorneys' fees (which are not subject to the cap), with future rent and other damages that arise solely from lease *termination* (which are subject to the cap). At the same time, Debtors confuse the plain meaning of Section 502(b)(6) and mischaracterize the holdings of other published decisions that support the lower courts' ruling in this case.

Once that confusion is remedied, and once Debtors' misconstruction of the Ninth Circuit's controlling test is corrected, it is readily apparent that applicable law, particularly in this Ninth Circuit, mandates the outcome that both the District Court and the Bankruptcy Court reached, allowing Creditors' claim for attorneys' fees and costs. This appeal should therefore be denied.

## V.  DISCUSSION

Section 502(b)(6) of the Bankruptcy Code is intended to limit landlords' claims for future rent and other damages that come due solely because of termination of a real property lease and the debtor's failure to complete the lease term, to prevent excessive claims based on years of future obligations, that would swamp the pool for unsecured claims. It is *not* intended to limit actual damages incurred by a landlord as a result of breaches of the lease that are unrelated to future rents and related costs. At issue here are attorneys' fees and costs actually incurred by Creditors as a result of Debtors' breaches of the Leases, not future rents unpaid due to lease termination. Therefore, by its express wording and clear legislative intent, Section 502(b)(6) does not apply, and the courts  below correctly allowed those fees and costs, rendering this appeal meritless.

### A.    Section 502(b)(6) and its Purpose

Section 502(b)(6) of the Bankruptcy Code provides that a claim is allowable except to the extent that:

> (6) if such claim is the claim of a lessor for damages resulting from

5

the termination of a lease of real property, such claim exceeds –

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of –

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

Parsing through the language of Section 502(b)(6) , it states that a landlord claim is allowable *except* to the extent that it is based on damages "resulting from the termination of a lease" and exceeds the formulae or cap of subparts (A) and (B). The converse is also true:  Any legitimate claim of a landlord that is *not* based on damages resulting from lease termination is allowable without regard to those formulae or cap.

The predecessor of Section 502(b)(6) originated in the Great Depression, when a wave of bankruptcies left many landlords with broken long-term leases, buildings sitting empty and no way to recover from the estates of their former tenants.  *El Toro*, 504 F.3d *supra* at 978, 979); *Oldden v. Tonto Realty Corp*., 143 F.2d 916, 919-920 (2nd Cir. 1944).  While Congress sought to permit landlords to file claims (contrary to prior law), they feared "extravagant claims for … unearned rent" could quickly deplete the estate, to the detriment of other creditors.  *El Toro, 504 F.3d   supra* at 979.

The solution was the compromise now embodied in Section 502(b)(6): Allowing landlords' claims generally, but limiting the amount of damages for future rent and costs arising solely from lease termination.  *El Toro*, 504 F.3d *supra* at 980.   The limitation on damages for future rent was "designed to compensate the landlord for his loss while not permitting a claim so large (based

6

on a long-term lease) so as to prevent other general unsecured creditors from recovering a dividend from the estate." *El Toro*, 504 F.3d *supra* at 979; S.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978), U.S. Code Cong. & Admin.News 5787, 5849 (1978).

Thus, to implement that compromise, Section 502(b)(6) was drafted to limit a landlord's rent damages that arise from lease termination to actual unpaid rent to date, plus future rent up to a cap, measured by one year or 15% of the remaining term. Nothing in the statute, however, was intended to limit a landlord's claim for other, non-rent damages that did not arise from the debtor's failure to complete the term of the lease. *El Toro* at 981-982. Section 502(b)(6) was only intended to limit damages "resulting from" the rejection of the lease (*El Toro* at 980), not collateral damages that the landlord might suffer as a result of the tenant's breaches. *Id.*

As this Court of Appeals has stated, this meant that "damages other than those based on a loss of future rental income are not subject to the cap." *Id.* This distinction was supported by the economics of the broken lease:

> It makes sense to cap damages for lost rental income based on the amount of expected rent: Landlords may have the ability to mitigate their damages by re-leasing or selling the premises, but will suffer injury in proportion to the value of their lost rent in the meantime. In contrast, collateral damages are likely to bear only a weak correlation to the amount of rent: A tenant may cause a lot of damage to a premises leased cheaply, or cause little damage to premises underlying an expensive leasehold.

*El Toro* at 980 .

In *El Toro*, this Court of Appeals summarized the test for determining whether a landlord's damages were affected by the Section 502(b)(6) cap as follows, based on whether those damages arose from lease termination or existed whether or not the lease was terminated:

> A simple test reveals whether the damages result from the rejection of the lease: Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?

*El Toro* at 981. The Ninth Circuit's test, therefore, is whether a particular damages component would be part of the cure required to be paid by the tenant in order to assume the lease. If so, that component does not arise merely from the rejection or termination of the lease – it arises regardless of whether the lease is terminated or assumed. Therefore, it is not capped by the formula of Section 502(b)(6), because it does not "result from the termination of a lease."

Here, as discussed below, Creditors' attorneys' fees and costs would have to be paid even if the Leases were to be assumed, and therefore, under this Court of Appeals' simple test, they do not arise from rejection of the Leases and are not capped by the language of Section 502(b)(6).

**B.    Under *El Toro*, Creditors' Claim Here Is Not Capped.**

In *El Toro*, this Court of Appeals concluded that damages arising from wet clay goo left by the tenant on the leased premises did not result from lease termination, and therefore were not capped by the provisions of Section 502(b)(6), because those damages would have still existed as a claim even if the debtor had not rejected the lease in bankruptcy – in order to assume and cure the lease, the debtor would have had to pay those damages even without a termination. The debtor's failure to clean up the goo was a breach of the lease whether the lease was assumed or rejected, and in order for the debtor-tenant to assume the lease, the damages arising from that breach would have to be cured. Therefore, the Court of Appeals ruled, the landlord's damages arising from the goo were not a result of termination, and were not capped by Section 502(b)(6). *El Toro,* 504 F.3d  *supra* at 981

It is precisely the same here, as to Creditors' attorneys' fees and costs.

Those fees and costs, as awarded by the Arbitrators, resulted from Debtors' failure to pay rent, the litigation that followed, and Debtors' subsequent failure to reimburse Creditors' legal costs, as required by the Leases, not from the termination of the Leases. Had the prepetition litigation, for example, resulted in Debtors retaining possession of the Leased Property and curing all defaults under the Leases, Debtors would have had to pay to Creditors the awarded attorneys' fees and costs, even though the Leases had not been terminated. The damages arose from Debtors' breaches of the Leases, and existed as an obligation of Debtors, whether or not the Leases were terminated. Therefore, the attorneys' fees and costs are not damages "resulting from the termination of a lease of real property," and are not within the limitations of Section 502(b)(6).

Most importantly, the Ninth Circuit's test as expressed in *El Toro* clearly establishes that Creditors' damages are not capped by Section 502(b)(6). If Debtors had attempted to assume the Leases in their chapter 11 case rather than forfeiting the Leases in the prior arbitration, the required cure payment under Section 365(b) would have necessarily included the attorneys' fees and costs. *Treesource Industries, Inc.*, 363 F.3d 997, 998 (9th Cir. 2004); *In re I-Mind Education Systems, Inc.*, 269 B.R. 47, 48 (Bankr. N.D. Cal. 2001). Debtors even concede this point in one of the subtitles of their brief:

> A. *It is Undisputed That a Landlord's Attorney's Fees Must be Paid in Order to Assume a Lease*, …

*Opening Brief*, page 10 (see also, pages 5-6 of the Opening Brief: "It is undisputed that a landlord's contractual attorney's fees must be paid in order to cure defaults and assume a lease under Bankruptcy Code Section 365(b)(1).").  Under the *El Toro* test, this mandates that the attorneys' fees and costs are not capped by Section 502(b)(6) – "the landlord [would] have the same claim against the tenant if the

tenant were to assume the lease rather than rejecting it" (E.R. Vol. 1, p. 7:20-21) and therefore the fees and costs are not future rents limited by Section 502(b)(6).

Nor could it seriously be argued in any event that attorneys' fees and costs are rents, much less future rents, intended to be covered by the provisions of Section 502(b)(6). To be characterized as rent, a claim must, among other requirements, be related to the value of the leased property and be a fixed, regular or periodic charge. *In re McSheridan*, 184 B.R. 91, 99-100 (9th Cir. B.A.P. 1995). Creditors' attorneys' fees and costs are neither related to the value of the Leased Property nor a periodic or fixed charge – they arise solely from legal costs incurred by Creditors in addressing Debtors' defaults and claimed offsets.

As such, Creditors' damages are not intended to be covered by the limitations of Section 502(b)(6) . To the contrary, they are collateral damages of the very sort that the Ninth Circuit has stated are not related to lease or property value and are not intended to be capped by Section 502(b)(6). *El Toro*, *supra* at 980-981. Thus the Bankruptcy Court and the District Court correctly ruled that Creditors' attorneys' fees and costs are not capped by Section 502(b)(6) and must be allowed in full.

## C. Debtors' Have Misapplied the *El Toro* Test

As simple as the *El Toro* test is, Debtors turn it on its head and reach the opposite, and clearly wrong, conclusion in their Opening Brief.

As the District Court noted, the *El Toro* test is this: "Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?" (E.R. Vol. 1, p. 7:20-21). Debtors readily acknowledge that the answer to that question here is "yes" – if the Leases had been assumed rather than terminated, Creditors would have had a claim for the attorneys' fees that Debtors would have had to pay to cure the Leases (Opening Brief, page 10). This is dispositive, under the *El Toro* test:

10

Because the attorneys' fees would constitute recoverable damages even if the Leases had not been terminated, they do not "result from the termination of a lease," and are not capped by Section 502(b)(6), by the clear and obvious logic of the *El Toro* test.

But Debtors make a fatal error in their analysis: They have misread the *El Toro* test by 180 degrees. Debtors argue that if the answer to the *El Toro* but-for test is "yes," then the Section 502(b)(6) cap *applies* (Opening Brief, page 139 – "In other words, a claim that must be paid in order to effectuate cure under Section 365(b)(1) is capped."). *El Toro*, though, mandates just the opposite – if the lessor would have the claim even if the termination did not occur, then the claim is *not* capped by Section 502(b)(6). *El Toro*, *supra* at 981. That is only logical: If the damages claim is recoverable even without a lease termination occurring, then it obviously does not result from lease termination and is not within the cap of Section 502(b)(6). If those damages are recoverable as part of the cure required to assume a lease, they have nothing to do with termination and are not capped.

In *El Toro*, this Court of Appeals applied that test to the wet clay goo that the tenant had left behind and concluded that the landlord would have a claim against the tenant whether the lease was terminated or assumed – the lease could not have been assumed without a cure by removal of the wet clay goo. This Court therefore concluded that the claim for damages from the goo was *not* capped by Section 502(b)(6). In other words, the Court ruled that a "yes" answer to the but-for test meant that the claim was *not* capped – the direct opposite of Debtors' reading of the test.

It is the same here: As Debtors concede, Creditors' attorneys' fees would be a claim against Debtors whether the Leases were terminated or assumed – the claim would be part of the required cure for assumption, even in the absence of any termination. Therefore, the claim does not arise from termination, but rather from

11

Debtors' breaches of the Leases, and the answer to the but-for test is "yes," meaning that the claim is *not* capped by Section 502(b)(6).

Notably, even though Debtors argue, incorrectly, that the *El Toro* decision supports their position, they then attempt to distinguish it from the present case. Debtors argue that the *El Toro* decision applies only to tort claims, not claims for breaches of leases as here. But, as the District Court found (E.R. Vol. 1, p. 7, fn. 4), nothing in the *El Toro* decision limits its logic to tort claims. The but-for test of *El Toro*, acknowledged by Debtors, does not distinguish between tort claims and contract claims. Whereas the concluding paragraphs of the decision expressly overrule the *McSheridan* decision to the extent that it limited tort claims, nothing in the decision suggests that other claims that do not result from lease termination can be limited, and the test that the Ninth Circuit expressly applies does not exclude allowance of breach of contract claims – it speaks generally of all claims that the landlord would have in the event of lease assumption. Debtors' distinction is therefore false, and the *El Toro* decision therefore fully supports, indeed mandates, the decisions of the District Court and the Bankruptcy Court here.

**D.    Debtors' Argument Attempts to Conflate Breaches and Termination.**

Debtors argue against the foregoing logic by conflating and confusing damages resulting from a breach (as here) and damages resulting from a termination (as required to be within the scope of Section 502(b)(6)).

Section 502(b)(6) limits only those lessor claims that are based on damages "resulting from the termination of a lease of real property." By its plain language, the statute does not affect claims that arise from mere breaches of a lease – only those damages that result from the lessee's failure to complete the term of the lease by paying future rent. See, *El Toro* at 980-981 ("Here, [lessor] would still have the same claim it brings today had [tenant] accepted the lease and committed to finish its term") . Lease breaches may or may not lead to termination, but they are not

12

the same event as termination and they give rise to damages that are separate and apart from damages that result from termination. When a lease is breached, for example by failure to reimburse the landlord's legal costs or failure to clean up premises, damages result from that breach; but quite apart from that, if those breaches lead to termination, additional and distinct damages result – future unpaid rent and the costs of finding and installing a replacement tenant. Section 502(b)(6) is designed, by both its plain language and its legislative intent, to limit the latter (damages from termination), but not the former (damages from existing breaches).

However, Debtors confuse the two in the Opening Brief. They conflate "breach" with "termination." For example, at page 3 of the Opening Brief, Debtors concede that the litigation in which Creditors incurred their attorneys' fees was an "action for _breach_ of the leases, to recover past and future rent, attorney's fees, and costs of suit." (emphasis added). Those causes of action, and the counterclaims asserted by Debtors, would have existed whether the Leases were terminated or cured and maintained. Yet, Debtors then confuse the matter by describing the attorneys' fees as being awarded "for litigation resulting from termination of leases for failure to pay rent." (Opening Brief, page 14). The litigation did not "result from termination of leases," but from Debtors' breaches of the Leases, and their discredited counterclaims for interference. Whether the Leases had been terminated or cured, the breaches would still have been litigated and the attorneys' fees would have been incurred. The attorneys' fees did not result from the Leases' termination, but from the breaches that ultimately precipitated that termination.

Debtors miss a critical distinction: Section 502(b)(6) speaks only of limiting claims arising from termination, not damages arising merely from breaches. The cap is designed to limit only those claims that arise from the tenant's failure to complete the term of the lease – damages such as future rent, refitting costs as in

*Brown*, and costs of reletting the premises as in *Healthy Hut*. A claim arising from a breach is not limited by the statute, either by its plain language or by the historical intent of the statute, as discussed above. Section 502(b)(6) limits claims for future rent arising from termination, not collateral claims arising from breaches (even if those breaches lead ultimately to termination).

**E.** **Post-*El Toro* Decisions Support the District Court Ruling as Well.**

Since the publication of the *El Toro* decision, other courts have adopted the Ninth Circuit's reasoning and, based on that logic, have allowed lessor claims that do not arise from termination *per se*, outside of the cap of Section 502(b)(6).

For example, in *In re MDC Systems, Inc.*, 488 B.R. 74 (Bankr. E.D.Pa 2013) ("*MDC Systems*"), the court expressly applied the *El Toro* test of whether the claim would be payable as part of an assumption cure, and specifically found that attorneys' fees were not capped as a form of rent:

> However, as explained below, while I agree that attorney's fees and costs are not "rent," I construe § 502(b)(6) to restrict only the "rent" component of a landlord's claim and not any other amounts that comprise the debt under applicable nonbankruptcy law.

*MDC Systems, supra* at 94. Moreover, the *MDC Systems* court specifically concluded that the cap of Section 502(b)(6) was intended to apply only to future rent, not to collateral claims: "The result derived from this plain meaning construction of § 502(b)(6) is consistent with its purpose: to set a limitation on a specific component of a lessor's claim, *i.e.*, future rent." *MDC Systems, supra* at 94.

Similarly, the recent decision in *In re Energy Conversion Devices, Inc.*, 483 B.R. 119 (Bankr. E.D. Mich. 2012) ("*Energy Conversion*"), supports the District Court's and Bankruptcy Court's allowance of Creditors' claim for attorneys' fees here. In the *Energy Conversion* decision, a bankruptcy court expressly adopted the

*El Toro* test and concluded that the formula and restrictions of Section 502(b)(6) were intended to be construed narrowly and only to cover prospective rents, not other damages. *Energy Conversion* 483 B.R. at 123. The *Energy Conversion* court rejected the lessee's argument that no damages of any kind were permissible outside of the Section 502(b)(6) formula, much as Debtors argue here. *Id.*

**F.**    **Debtors' Cited Decisions do Not Support Their Argument.**

At pages 13-17 of the Opening Brief, Debtors argue that the published decisions in *In re Healthy Hut Incorporated*, 506 B.R. 526 (Bankr. Hawai'i 2014) ("*Healthy Hut*"), and *In re Joseph and Nancy Brown*, 398 B.R. 215 (Bankr. N.D.Ohio 2008) ("*Brown*"), support their argument and interpretation of *El Toro*. Clearly, the decisions do not support Debtors' argument, and in fact, by way of contrast, prove Creditors' point:

*Healthy Hut* involved a lease that was unilaterally terminated by the debtor/lessee. Prior to its termination, the debtor had not breached the lease in any respect. As a direct result of the termination, however, the lessor incurred brokers' and attorneys' fees in the process of reletting the premises. Inasmuch as there had been no breach of the lease prior to termination, the lessor did not incur those fees until the debtor terminated the lease and the lessor was compelled to seek a replacement tenant. On the basis, the *Healthy Hut* court concluded that:

> If Healthy Hut had not terminated the lease, the landlord would not have incurred the attorneys' fees or reletting expenses.

*Healthy Hut, supra* at 531. Given that conclusion, and applying the *El Toro* test and the clear language of Section 502(b)(6), the court determined that the lessor's claim was capped because it *did* result from termination of the lease. *Id*.

Clearly, this is in sharp contrast to the case at bar: Here, quite apart from lease termination, Debtors refused to pay rent, and asserted various counterclaims

for damages against Creditors, including breach of contract and interference. All of those counterclaims were dismissed, with Creditors prevailing and incurring the attorneys' fees in the process. All of those fees would have been recoverable even if the Leases had not been terminated, as a cost of cure and assumption – even Debtors concede this, at pages 8, 10 and 12 of the Opening Brief. Thus, contrary to the *Healthy Hut* case, the attorneys' fees were not incurred solely because of the termination, and would have been recoverable damages even if the debtor had not terminated and had chosen to cure its arrearages. The *Healthy Hut* case is therefore distinguishable, and highlights the correctness of the District Court's decision here, by way of contrast.

That is equally true of the *Brown* case. In *Brown*, the damages in question were "refitting" costs – costs "which are necessary to make the leased property suitable for the needs of a replacement tenant." *Brown*, *supra* at 217. By their nature, the refitting costs only arose from the lessee's termination of the lease, requiring refitting for a replacement tenant: "No liability for refitting costs would have, therefore, arisen had the Debtors completed the terms of their lease with the Creditors." *Brown* at 219. Accordingly, the *Brown* court found that –

> Given this, it can only follow that the Debtors' liability for the refitting costs was, in the nomenclature of § 502(b)(6), a consequence directly "resulting from the termination of a lease of real property."

*Brown* at 219. Thus, as in *Healthy Hut, supra*, the damages in question only arose upon lease termination, and would not have been incurred had the tenant remained in the premises for the remainder of the lease term. They were therefore capped by the language of Section 502(b)(6).

This is in contrast to the case at bar, in which the damages, attorneys' fees incurred by Creditors in addressing Debtors' nonpayment of rent and counterclaims for breach, were incurred irrespective of termination, and would

have been recoverable even if Debtors had chosen to stay in the premises, cure their defaults and comply with the terms of the Leases going forward. Thus, the *Brown* decision, like the *Healthy Hut* decision, fails to support Debtors' argument and is readily distinguishable from the case at bar. By way of contrast, the two cases illustrate the merit of Creditors' position and the but-for test of *El Toro*.

## G.    Debtors' Discussion of Plain Meaning Misses the Point.

At pages 17-24 of the Opening Brief, Debtors belabor the definition of "resulting from," but the discussion misses the point altogether. There is little doubt as to what "resulting from" means; the gap in Debtors' argument is not in those two words but in the words that follow: "termination of a lease." Creditors' damages, attorneys' fees incurred in litigation with Debtors, did not result from Debtors' termination of the Leases, but from their breaches – the attorneys' fees did not result from Debtors' failure to remain in the Premises for the term of the Leases, and would have been recoverable even if the Leases had not been terminated. That is the point of the *El Toro* but-for test, and Debtors' exploration of the term "resulting from" misses that point.

## H.    Debtors' Analysis of Legislative Purpose is Misguided.

Debtors argue that eliminating Creditors' claim for attorneys' fees is consistent with the legislative purpose of Section 502(b)(6), because, Debtors argue, that purpose is "treating landlords equally to one another but less favorably than general unsecured creditors, providing landlords with a fixed and limited claim in lieu of no claim at all …" (Opening Brief, pages 24-25). In fact, that is not at all the intended purpose or correct interpretation of Section 502(b)(6).

The purpose of the Section 502(b)(6) cap is to eliminate landlords' claims for future rents that could swamp the estate by their size, not to limit landlords' claims for actually and presently-incurred losses: While Congress sought to permit landlords to file claims (contrary to prior law), they feared "extravagant claims for

… unearned rent" could quickly deplete the estate, to the detriment of other creditors." *El Toro*, *supra* at 978, 979; *Oldden v. Tonto Realty Corp.*, 143 F.2d 916, 919-920 (2nd Cir. 1944). To avoid potentially huge future rent claims, Congress created Section 502(b)(6), allowing landlords' claims generally, but limiting the amount of damages for future rent coming due after lease termination. *El Toro, supra* at 980. The limitation on damages for future rent was "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) so as to prevent other general unsecured creditors from recovering a dividend from the estate." *Id.*; S.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978), U.S. Code Cong. & Admin.News 5787, 5849 (1978).

For that reason, Section 502(b)(6) was drafted to limit a landlord's rent damages that arise from lease termination to actual unpaid rent to date, plus future rent up to a cap. Nothing in the statute, however, was intended to limit a landlord's claim for other, non-rent damages that did not arise from the debtor's failure to complete the term of the lease. *El Toro* at 981-982. Section 502(b)(6) was only intended to limit damages "resulting from" the rejection of the lease (*El Toro* at 980), not collateral damages that the landlord might suffer as a result of the tenant's breaches. *Id*.

Thus, Debtors' reading of Section 502(b)(6) as a punitive measure to limit landlords' claims to fixed amounts and to treat landlords generally less favorably than other creditors, is simply wrong. Section 502(b)(6) is intended to limit claims that arise directly from the lessee's failure to complete the term of the lease, so that years of future rent under long-term leases do not overwhelm other claims, but Section 502(b)(6) is not intended to otherwise limit landlords' claims for damages incurred as a result of lessees' breaches.

So it is here: Creditors' claim for future rent has already been capped and is not an issue in this appeal, but their claim for attorneys' fees actually incurred and

18

recoverable under the Leases, arising from Debtors' breaches, are not capped by Section 502(b)(6). The courts below therefore correctly interpreted Section 502(b)(6) and allowed Creditors' claim, and this appeal is without merit.

## I.    **Debtors Misunderstand the District Court's Reasoning.**

In arguing that that District Court erred in its ruling, Debtors' reveal a fundamental misunderstanding of that reasoning.

In its Order, the District Court analyzed the *El Toro* but-for test, and found that while application of the test in this case, given the prepetition termination of the Leases, was imperfect, "the Creditors have the better side of the argument." (E.R. Vol. 1, p. 9:22-23). The District Court then went further in analyzing *El Toro*, concluding that there was a second portion of the decision that provided a clearer answer in this case. In particular, the District Court noted the *El Toro* Court's assessment that collateral claims that do not arise from lease termination are not capped by Section 502(b)(6), and that those collateral claims are characterized by "a weak correlation to the amount of rent: A tenant may cause a lot of damage to a premises leased cheaply, or cause little damage to premises underlying an expensive leasehold." *El Toro, supra* at 980.

The District Court quoted the *El Toro* decision in explaining that collateral damage claims, unrelated to the amount of rent and not based on future rent, should not be, and is not, capped by Section 502(b)(6):

> Landlords in future cases may have significant claims for both lost rental income and for breach of other provisions of the lease. To limit their recovery for collateral damages only to a portion of their lost rent would leave landlords in a materially worse position than other creditors. In contrast, capping rent claims but allowing uncapped claims for collateral damage to their rented premises will follow congressional intent by preventing a potentially overwhelming claim for lost rent from draining the estate, while putting landlords on equal footing with other creditors for their collateral claims (footnotes

19

omitted).

(E.R. Vol. 1, p. 10:6-11), quoting *El Toro, supra* at 980.  The District Court then reasoned that Creditors' attorneys' fees are collateral damages and are necessary to put Creditors on equal footing with other creditors.  (E.R. Vol. 1, p. 10:12-13). Further, the District Court noted that the fees "bear only a weak correlation to the amount of rent owed," and that capping Creditors' claim for those fees "would put the landlord in a materially worse position than other creditors who obtained judgments because they were damaged by debtor's conduct, particularly those who may have received attorneys' fees awards in a different case." (E.R. Vol. 1, p. 10:12-19).

Thus did the District Court adhere strictly to the reasoning and tests of *El Toro*, reaching the same conclusion as the Bankruptcy Court below:  That Creditors' attorneys' fees were collateral damage that did not result from termination of the Leases, and that Creditors' claim for those fees were therefore not capped by the provisions of Section 502(b)(6).  That was in fact a correct reading and application of Section 502(b)(6) and the *El Toro* decision interpreting it.

However, Debtors misconstrued the District Court's reasoning, arguing that the decision somehow contradicts *El Toro* by creating an exception to the *El Toro* test.  Because Debtors have misunderstood the *El Toro* test, as discussed above, they have come to the erroneous conclusion that the District Court "refused to apply the *El Toro* test" (Opening Brief, page 31) in allowing Creditors' claim for attorneys' fees.  This is simply wrong:  The District Court did not rule contrary to the *El Toro* test or create an exception to the test – it followed that test closely, ruled that Creditors have the "better side" of the test because their attorneys' fees would be recoverable even if the Leases had not been terminated, and then went on to further confirm the allowability of the attorneys' fees by finding that they fit

within the Court of Appeals' definition of collateral damages that are not capped.

Nor did the District Court create any exception to the *El Toro* test based on prepetition events, as Debtors contend. Rather, the District Court pointed out that the *El Toro* test is more difficult to apply where the lease termination has already occurred prepetition, but then the District Court reached the same result as the *El Toro* test would require in any event – allowance of Creditors' collateral damages for attorneys' fees because they are not capped damages resulting from lease termination.

**J.** **Debtors Misunderstand District Court's Reference to Judgments.**

Lastly, as a further illustration of Debtors' misunderstanding of the District Court's reasoning, they have seized upon the District Court's reference to other creditors' judgments to argue that the District Court misunderstands the Bankruptcy Code (Opening Brief, page 32). This too demonstrates Debtors' fundamental misinterpretation of the District Court's ruling.

The District Court pointed out that to deny Creditors their claim for attorneys' fees would unfairly deprive them of equal footing with other creditors who could assert claims for attorneys' fees under their own contractual provisions:

> To cap a landlord's claim to exclude fees and costs would put the landlord in a materially worse position than other creditors who obtained judgments because they were damaged by a debtor's conduct, particularly those who may have received attorney's fees awards in a different case.

> (E.R. Vol. 1, p. 10:12-24)

The District Court's obvious point was that the landlord's right to attorneys' fees should be no less allowable than any other creditors' right to attorneys' fees, if landlords are to be on equal footing with other creditors other than as to future rent. But Debtors have ignored the general thrust of the analysis and focused instead on

21

the reference to judgments, arguing that the District Court presumes that judgments have greater weight as claims in bankruptcy than other non-judgment claims. Clearly, that was not the District Court's presumption or point. The District Court was simply pointing out the imbalance that would result from disallowing a landlord's attorneys' fees claim while allowing another creditor's attorneys' fees claim.

## VI.  <u>CONCLUSION</u>

Based on the foregoing, the Creditors respectfully submits that the District Court and the Bankruptcy Court correctly allowed Creditors' claim for attorneys' fees, without reduction by the cap of Section 502(b)(6), and that the present appeal is therefore without merit and should be denied.

DATED:  February 4, 2015

MEYERS LAW GROUP, P.C.

By:   /s/  Merle C. Meyers
      Merle C. Meyers, Esq.
      Attorneys for the Appellees, Creditors

## CERTIFICATION REQUIRED BY
## <u>F.R.A.P. RULE 28-2.6:  STATEMENT OF RELATED CASES</u>

The undersigned certifies that the following are known related cases and appeals:  None.

February 4, 2015                              /s/ Merle C. Meyers
                                             Merle C. Meyers, Esq.

## CERTIFICATE OF COMPLIANCE PURSUANT
## TO F.R.A.P. RULE 32(a)(7) AND CIRCUIT RULE 32

The undersigned certifies the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) and contains 7,005 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) and was prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, size 14 font.

February 4, 2015                          /s/ Merle C. Meyers
                                          Merle C. Meyers, Esq.

## <u>CERTIFICATE OF SERVICE BY FIRST CLASS MAIL AND ECF</u>

I, the undersigned, state that I am employed in the City and County of San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made; that I am over the age of eighteen years and not a party to the within action; that my business address is 44 Montgomery Street, Suite 1010, San Francisco, California 94104-4789; that on the date set out below, I served a copy of the following:

## <u>APPELLEES' ANSWERING BRIEF</u>

on each party listed below by placing such a copy, enclosed in a sealed envelope with first class postage thereon affixed, in a United States Postal Service mailbox at San Francisco, California, addressed to each party listed below.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on February 4, 2015.

/s/ Michele Thompson
MICHELE THOMPSON

MACDONALD | FERNANDEZ LLP
Iain A. Macdonald
Reno F.R. Fernandez III
Matthew J. Olson
Third Floor
221 Sansome Street
San Francisco, CA 94104
Email: matt@macfern.com
iain@macfern.com
reno@macfern.com